**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMIR S. MUHAMMAD,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 17-6164 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Amir S. Muhammad's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g), and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court remands this matter for further analysis.

I. **BACKGROUND**

  A. **Procedural History**[1]

Plaintiff applied for DIB on July 24, 2013, alleging disability beginning on June 21, 2013. (AR 72, 151.) These claims were denied initially on January 18, 2014, and again upon

---

[1] The Administrative Record is located at ECF Nos. 5-1 through 5-10. The Court will reference the relevant pages of the Administrative Record ("AR") and will not reference the corresponding ECF citations within those files.

reconsideration on April 23, 2014. (*Id.* at 73-80, 82-93.) The Administrative Law Judge ("ALJ") conducted an administrative hearing on December 28, 2015, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 33-71, 17-26.) The Appeals Council denied Plaintiff's request for review on June 7, 2017. (*Id.* at 3-6.) On August 15, 2017, Plaintiff filed an appeal to the District Court of New Jersey and the matter was assigned to the Undersigned. (ECF No. 1.) The Commissioner filed the Administrative Record on October 25, 2017. (ECF No. 5.) On October 26, 2017, the Court issued a scheduling order in the matter. (ECF No. 7.) On March 9, 2018, the Court issued a Notice of Call for Dismissal. (ECF No. 9.) Plaintiff filed his moving brief on March 16, 2018. (ECF No. 11.) The case was reassigned to Chief Judge Jose L. Linares on April 13, 2018. (ECF No. 14.) The Commissioner filed opposition on April 30, 2018, and Plaintiff filed his reply on May 12, 2018. (ECF Nos. 15, 16.) On September 28, 2018, Chief Judge Linares reassigned the matter to Magistrate Judge Paul A. Zoss pursuant to Standing Order 18-2. (ECF No. 17.) On January 4, 2019, this matter was reassigned to the Undersigned for all further proceedings. (ECF No. 18.)

### B. Factual History

Plaintiff is a male born on June 16, 1965. (AR 151.) His highest level of education is twelfth-grade, and he holds a general education diploma ("GED") in lieu of a high school diploma. (*Id.* at 38-39.) He also holds a commercial driver's license. (*Id.* at 39.) Plaintiff has served in various technical manufacturing positions: he worked as a brewer, beginning in 1999; worked as a beverage batcher, ending in 2013; and later worked at Nabsico, from January 12, 2015 to November 6, 2015. (*Id.* at 40-44, 177, 186.) Plaintiff filed his initial disability claim based on: "cervical spine damage"; "lumbar spine damage"; and "torn meniscus." (*Id.* at 72, 82.) He declined to apply for Supplemental Security Income. (*Id.* at 151.)

Plaintiff has an extensive history of medical problems, appearing to begin after an incident at work that occurred in 2004. (*Id.* at 376.) He has been evaluated for numerous conditions, including problems with his legs, left knee, lumbar spine, lower back pain, hypertension, and depression. (*Id.* at 228-29, 235, 336-37, 376-77, 507, 509-13, 549.) He has also been diagnosed as positive for the human immunodeficiency virus ("HIV"). (*Id.* at 561.)

At the hearing, Plaintiff testified that he has undergone five surgeries on his cervical spine. (*Id.* at 44.) Plaintiff's counsel indicated at the hearing that Plaintiff was scheduled to undergo lumbar spine surgery in the near future. (*Id.* at 35.) Plaintiff also testified that he takes hydrocodone and Vicodin for pain, but does not like to do so because, on at least one occasion, his supervisor reprimanded him for "nodding" out at work. (*Id.* at 47-48.) In addition to painkillers, Plaintiff takes Procardia, Vistalic, Crestor, and Adacand for his blood pressure and Atripla for his HIV. (*Id.* at 55.) Plaintiff testified that he experiences pain in his neck, which will require him to undergo another surgery in the future to reduce the pain. (*Id.* at 51.)

Plaintiff testified that he has had surgeries on his left knee, and that his left knee has been totally replaced. (*Id.* at 54.) He further testified that he believes that his medication makes him depressed, but he is not being treated for depression, nor does he take medication for depression. (*Id.* at 57.) Plaintiff stated that he has received physical therapy in the past. (*Id.* at 58.) Plaintiff explained the details surrounding his accident while working at Sunny Delight in 2013, stating that he "went to lift a . . . 55-gallon drum and put it on a . . . drum truck, and when [he] lifted it" he became injured. (*Id.* at 59-60.) He stated that "while [he] was out, [his employer] announced that they [were] cutting back," and he was subsequently laid off. (*Id.* at 42.) Plaintiff stated that after the incident at Sunny Delight, he was out of work for eighteen months, during which time he had his left knee replaced. (*Id.* at 60.) Plaintiff stated that he attempted to return to work as a truck

3

driver in 2014, but found himself physically unable. (*Id.* at 61.) He then attempted temporary work for Exxon Mobil unloading railroad cars for six weeks, but he "just [could not] do it." (*Id.* at 62.) In January 2015, Plaintiff began work at Nabisco. (*Id.* at 44, 61.) He started as an "associate deduction operator," working the "cookie line," and was later promoted to "line lead." (*Id.* at 42-43.) He held this position until November 6, 2015, when he was cut working and the company had to shut down production and toss the cookie batch due to potential contamination.[2] (*Id.* at 43-44.)

## C. The ALJ's Decision

On March 7, 2016, the ALJ rendered a decision. (*Id.* at 26.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 17-19.) At step one of the analysis, the ALJ found that Plaintiff had engaged in substantial gainful activity ("SGA") from January 12, 2015 to November 6, 2015. (*Id.* at 19.) The ALJ further found, however, that there had been a continuous twelve-month period during which Plaintiff had not engaged in SGA, and cabined her decision to that period. (*Id.*) At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of depression, lumbar and cervical degenerative disc disease, and osteoarthritis. (*Id.*) The ALJ also noted Plaintiff's history

---

[2] Plaintiff equivocated at the hearing regarding the exact terms of his departure from Nabisco:

> Actually, I got cut, and, I [do not] know whether this is on the record, but I got cut, and I, and I, [I am] HIV positive, and I had to shut down the line and report it and, and that – you know we had to literally throw out a lot of product because we [did not] – obviously, we [do not] want to contaminate the – and when I brought that, you know, information towards the – I mean, the medical people, they – under their recommendation, it was maybe I should go out, because, you know not being discriminatory, but I was more afraid of something, like, you know, public getting exposed to that.

(AR 43-44.)

4

of treatment for HIV, but found this condition to be non-severe because the record lacked any evidence that "this impairment has had the requisite limiting effects on [Plaintiff's] ability to perform basic work activities." (*Id.* at 20.)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") "to perform light work . . . except [Plaintiff] is limited to only occasional climbing of ramps and stairs"; "[h]e can never perform any climbing of ladders, ropes, or scaffolds"; he is able "to frequently perform balancing and he can occasionally perform stooping"; he is never able "to perform any kneeling, crouching or crawling"; and that "[h]e must avoid all unprotected heights and moving mechanical parts." (*Id.* at 21.) The ALJ also limited Plaintiff to "only occasional reaching above shoulder level with the right upper extremity"; and to "simple and routine work" as a result of his depression. (*Id.*) At step four, the ALJ found Plaintiff unable to perform any past relevant work. (*Id.* at 24.) At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, jobs in the form of "assembler/small products" and "mail clerk/non-postal worker" exist in sufficient numbers in the national economy for Plaintiff to perform. (*Id.* at 25.) The ALJ then found that Plaintiff had not been under a disability from June 21, 2013, through the date of the decision. (*Id.* at 26.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal citation and quotation omitted).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## B. Establishing Disability

In order to be eligible for entitlements under the Social Security Act, a claimant must be "[unable] to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months . . . ." 42 U.S.C. § 423(d)(1)(a). For purposes of the statute, a claimant is disabled "only if [his] physical or mental impairment or impairments are of such severity that he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that he has not engaged in any SGA since the onset of his alleged disability. *Id.* At the second step, the claimant must establish that he suffers from a severe impairment or "combination of impairments." *Id.* § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant satisfies his burden, the analysis proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that his impairment is equal to one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that

his severe impairment is equal to a listed impairment, he is presumed disabled and is entitled to benefits. *Id.* If his claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his past relevant work. *Id.* § 404.1520(a)(4)(iv). "A claimant's RFC measures the most he can do despite his limitations." *Zirnsak*, 777 F.3d at 611 (internal quotation omitted) (citing 20 C.F.R. § 404.1545(a)(1) (internal quotations omitted)). If the Commissioner determines that the claimant cannot resume his past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

## III. DISCUSSION

Based on the Court's review of the ALJ's decision and the extensive record in the present case, the Court finds good cause to remand the matter. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence.[3] *Cotter*, 642 F.2d at 705. Here, the ALJ provided insufficient analysis for the Court to find that the weight she afforded to

---

[3] The Court requires "from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.

8

Plaintiff's subjective complaints of pain, as supported by the medical record, was supported by substantial evidence.

Plaintiff advances three principal arguments contending that the ALJ's decision is not supported by substantial evidence: (1) "the ALJ improperly evaluated the medical evidence," by failing to afford the proper weight to Plaintiff's subjective complaints of pain supported by treating physicians and the medical record; (2) the ALJ's RFC determination led to an improper finding that Plaintiff can perform light work; and (3) the ALJ posed improper hypotheticals to the vocational expert ("VE"), which the ALJ then relied on at step five. (Pl.'s Moving Br. 18, 26, ECF No. 11.) The Court will first address the ALJ's evaluation of the medical evidence at step three of the sequential analysis. The Court will then address the issue of the ALJ's evaluation of Plaintiff's subjective complaints of pain as supported by his treating physicians, particularly, Dr. Bechler. Because the Court finds it necessary to remand for further analysis of the medical evidence, the Court does not reach the issues of Plaintiff's RFC and the hypotheticals posed to the VE.

### A. The ALJ's Step Three Assessment

Plaintiff contends that the ALJ only partially considered his eligibility for disability under the Appendix 1 categories, and that the ALJ's statements are conclusory. (Pl.'s Moving Br. 19.) Plaintiff also contends that the ALJ "failed to consider [his] severe cervical condition under the appropriate Listing." (*Id.* at 21.)

At step three, the ALJ considered Plaintiff's potential qualification under 1.02, major dysfunction of a joint, in relation to Plaintiff's knee issues, and explained that he failed to meet the criteria under that listing. (AR 20.) The ALJ noted that the listing required involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively, and the evidence did not support such a limitation. (*Id.*) Contrary to Plaintiff's assertion that the ALJ did

9

not consider Plaintiff's spinal problems under listing 1.04, the ALJ also considered Plaintiff's qualifications under that listing in the opinion. (*Id.*) The ALJ found that while the record supported a finding that Plaintiff "suffer[ed] degenerative disc disease in his cervical and lumbar spine," the record did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis required to find Plaintiff disabled under 1.04. (*Id.*)

Finally, the ALJ properly analyzed Plaintiff's depression under the paragraph B and paragraph C factors as prescribed under listing 12.04. (*Id.* at 20-21.) The ALJ found that Plaintiff is mildly restricted regarding his activities of daily living and has mild difficulties in social functioning. (*Id.* at 20.) The ALJ found moderate difficulties regarding Plaintiff's concentration, persistence, or pace and found one to two episodes of decompensation, each of extended duration, supported by the record. (*Id.* at 21.) Because Plaintiff did not satisfy the requirement of marked impairments in two or more categories, or one marked limitation and repeated episodes of extended-duration decompensation, the ALJ properly found that the paragraph B factors were not satisfied. (*Id.*) The ALJ also considered whether the paragraph C criteria were satisfied and explained that Plaintiff did not meet the paragraph C criteria because the evidence did not demonstrate repeated episodes of decompensation or "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate or an inability to function outside a highly supportive living arrangement" with continued need for such an arrangement. (*Id.*)

At step three, the ALJ was required to analyze Plaintiff's potential qualification for disability under the listings in Appendix 1, providing meaningful opportunity for Court review.

*See Cotter*, 642 F.2d at 705. As discussed above, the ALJ did so, and therefore the Court is not persuaded by Plaintiff's argument regarding the ALJ's findings at step three.[4]

B. **Plaintiff's Subjective Complaints of Pain**

The Court must remand to afford the ALJ the opportunity to provide more detailed analysis regarding Plaintiff's subjective complaints of pain and the opinions of Dr. Bechler, Plaintiff's treating physician. The Third Circuit has held that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. R.R. Ret. Bd.*, 834 F.2d 62, 65 (3d Cir. 1986)); *Ferguson*, 765 F.2d at 37.

"Testimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when . . . it is supported by competent medical evidence." *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *see also Podedworny*, 745 F.2d at 218 (holding that the ALJ abdicated his duty by failing to afford significant weight to testimony of the claimant and treating physicians in accordance with precedent and in failing to explain rejection of this evidence against the *Cotter* standard). In *Morales v. Apfel*—where the record demonstrated the plaintiff's questionable credibility because it contained medical evidence that the plaintiff was both malingering and uncooperative—the Third Circuit held that "[a]lthough an ALJ may consider [her] own observations of the claimant and this Court cannot second-guess the ALJ's credibility

---

[4] The Court is also not persuaded by Plaintiff's argument that the ALJ was required to consider obesity under SSR-02-1. (Pl.'s Moving Br. 21.) Nevertheless, because the Court remands on other issues, the ALJ may consider the obesity issue upon remand.

judgments, they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record." 225 F.3d at 318.

Plaintiff's subjective complaints of pain are supported by the underlying medical record. (*See e.g.*, AR 377, 427-33, 434-39, 465-501, 507.) For the ALJ to render a finding of non-disabled when the record contains conflicting evidence, the ALJ's opinion must contain adequate rationale for the weight afforded to the relevant items of conflicting evidence. *See Mason*, 994 F.2d at 1067-68 (citing *Carter*, 834 F.2d at 65); *see also Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003) (citing *Fargnoli*, 247 F.3d at 42) ("[I]t is particularly important that the ALJ explain the reasons behind a decision when there is conflicting evidence on the record."). Here, the ALJ's decision did not contain sufficient rationale. For example, the ALJ relied on the opinion of Dr. Bechler but did not provide adequate analysis regarding the conflicting evidence. Specifically, the ALJ's decision provided that "Dr. Bechler opined that [Plaintiff] was still capable of performing medium exertional work." (AR 23.) The ALJ, however, failed to state explicitly the weight afforded to this opinion in accordance with the standard, depriving the Court of the opportunity to review the weight afforded to Dr. Bechler's opinion. (AR 23, 497.) Additionally, the ALJ did not discuss Dr. Bechler's treatment notes, in which he wrote:

> At this point, [Plaintiff] has aggravated his underlying arthritic condition. This despite the modified duty restrictions placed on him. He will remain out of work for the next [two] weeks until seen in re-evaluation. It is quite possible that he may not be able to continue to participate at the functional level that his functional capacity evaluation suggested.

(AR 500; Def.'s Opp'n Br. 4.) The ALJ was required to discuss the conflicting record evidence and explain the relative weight afforded to the evidence.

Significantly, access to the Commissioner's reasoning is essential to meaningful Court review:

> [U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Dobrowolsky*, 606 F.2d at 407 (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Because the ALJ provided insufficient analysis, the Court cannot conclude that the ALJ's findings regarding Plaintiff's subjective complaints of pain were supported by substantial evidence. The Court, accordingly, must remand to the ALJ for further analysis.[5]

## IV.  CONCLUSION

For the foregoing reasons, this matter is remanded for further proceedings. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 31, 2019

---

[5] Plaintiff argues that the ALJ rendered RFC findings which were conclusory and contrary to the procedure outlined in S.S.R. 96-8. (Pl.'s Moving Br. 27.) Plaintiff also argues that the ALJ failed to focus on Plaintiff's ability to sustain work activities. (*Id.*) Plaintiff further argues that because the ALJ found Plaintiff limited to simple and routine tasks resulting from his depression, it was error for the ALJ to rely on VE testimony in response to a hypothetical that Plaintiff could perform the jobs of assembler, mail clerk and order clerk. (*Id.* at 31.) Because the RFC determination is tethered to the relative weight of the medical opinions and evidence catalogued by the ALJ, the Court does not reach Plaintiff's RFC argument or arguments related to subsequent steps in the sequential analysis. On remand, the ALJ should explain the weight assigned to each opinion and provide thorough analysis in the event of further district court review.

13